1
2
3
4
5
6
7
8

**UNITED STATES DISTRICT COURT**

**SOUTHERN DISTRICT OF CALIFORNIA**

9
10
11

| | |
|---|---|
| PULSE ELECTRONICS, INC., a Delaware corporation,<br><br>                   Plaintiff,<br><br>v.<br><br>U.D. ELECTRONIC CORP., a Taiwan corporation,<br><br>                   Defendant. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | Case No.:  3:20-cv-01676-BEN-DEB<br>**Related Case:** 3:18-cv-00373-BEN-MSB<br><br>**ORDER GRANTING DEFENDANT'S MOTION TO DISMISS**<br><br>**[ECF Nos. 13, 16, 18]** |

## I.    <u>INTRODUCTION</u>

Plaintiff PULSE ELECTRONICS, INC., a Delaware corporation ("Plaintiff" or "Pulse") brings this action for patent infringement against Defendant U.D. Electronic Corp., a Taiwan corporation ("Defendant" or "UDE").  Complaint, ECF No. 1 ("Compl.").

Before the Court is Defendant's Motion to Dismiss Pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure (the "Motion").  ECF No. 13.  The Motion was submitted on the papers without oral argument pursuant to Civil Local Rule 7.1(d)(1) and Rule 78(b) of the Federal Rules of Civil Procedure ("FRCP").  ECF No. 19.

After considering the papers submitted, supporting documentation, and applicable law, the Court **GRANTS** Plaintiff's Motion to Dismiss *without prejudice*.

/ / /

-1-

## II.   **BACKGROUND**

This case is one of several lawsuits in which Plaintiff accuses Defendant of infringing on the claims of various patents it owns.

### A.   **Statement of Facts**

The accused products in this case relate to RJ-45 Integrated Connector Modules ("ICMs")[1] that connect electronic devices across local area networks ("LANs").  Compl. at 3[2]:6-13.

Founded in 1947, Plaintiff designs and manufactures electronic components, including RJ-45 ICMs, which are intended for use with electronics.  Compl. at 3:6-10. Plaintiff maintains its headquarters in San Diego, California, *id.* at 2:5-7, but its "engineering design centers and manufacturing facilities supply products to a broad international customer base," *id.* at 3:9-10.  Plaintiff owns more than 100 United States and international patents dealing with RJ-45 ICM technology, *id.* at 3:23-25, one of which is at issue in this case and covers various methods for limiting electromagnetic interference ("EMI"), or the disruption of the operation of an electronic product due to electromagnetic waves.  *Pulse I*, 2021 WL 981123, at *2.  On August 10, 2004, the United States Patent and Trademark Office (the "USPTO") issued the relevant patent in suit pertaining to this case, United States Patent Number 6,773,302 (the "302 Patent"):

---

[1]   A detailed description of the ICMs at issue in this patent dispute is provided in the Court's order on the parties' cross-motions for summary judgment in the related case to this matter: *Pulse Electronics, Inc. v. U.D. Electronics Corp.*, Case No. 3:18-cv-00373-BEN-MSB, 2021 WL 981123, *1 (S.D. Cal. Mar. 16, 2021) ("*Pulse I*").  The Court takes judicial notice of the record in *Pulse I*.  *See* FED. R. EVID. 201(b)(1)-(2) (providing that at any stage of a proceeding, courts may take judicial notice of (1) facts not subject to reasonable dispute and "generally known within the trial court's territorial jurisdiction" and (2) adjudicative facts, which "can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned"); *see also Rand v. Rowland*, 154 F.3d 952, 961 (9th Cir. 1998) (noting that a district court may take judicial notice "of its own records, either at the behest of the defendant or *sua sponte*").

[2]   Unless otherwise indicated, all page number references are to the ECF-generated page number contained in the header of each ECF-filed document.

| Patent No. | Title | Description | Issue Date | Expiration Date |
|---|---|---|---|---|
| 6,773,**302** | Advanced Microelectronic Connector Assembly and Method of Manufacturing | An advanced modular plug connector assembly incorporating a substrate disposed in the rear portion of the connector housing, the substrate adapted to receive one or more electronic components such as choke coils, transformers, or other signal conditioning elements or magnetics. | August 10, 2004 | March 28, 2022[3] |

Reply at 9:27-28; *see also* Exhibit "A" to Complaint, ECF No. 1-3 at 2.

Founded in 2005, Defendant is a Taiwan corporation that manufactures and supplies communications equipment, including RJ-45 ICMs, for integration into computer networking devices overseas.  Compl. at 2:8-10, 3:26-27.  Defendant is headquartered in Taoyuan City, Taiwan and operates two factories in Guandong and Sichuan, China.  *See* Exhibit "M" to Compl., ECF No. 1-15 at 4.

Plaintiff alleges that "Defendant makes, uses, offers to sell, sells and/or imports into the United States products that infringe" on the 302 Patent, including, but not limited to, the following Accused Products:

| Accused Products: | Series: | Claims Infringed: |
|---|---|---|
| 1G multi-port ICM products | M1, M4, M6, MC, N1, N6, N8, RM, and RN series 1G devices | 18 19 22 23 |
| "Multi-Gigabyte" (e.g., 2.5G/5G) single- and multi-port ICM products | GM2, GM4, and GM6 series 2.5G devices | |

---

[3]   "[A] patent typically expires 20 years from the day the application for it was filed. *Kimble v. Marvel Ent., LLC*, 576 U.S. 446, 451 (2015) (citing 35 U.S.C. § 154(a)(2) (providing that a patent "grant shall be for a term beginning on the date on which the patent issues and ending 20 years from the date on which the application for the patent was filed in the United States")).  "[W]hen the patent expires, . . . the right to make or use the article, free from all restriction, passes to the public." *Id.*  In this case, Pulse Engineering, Inc. applied for the 302 Patent on March 14, 2002, meaning it would expire on March 14, 2022. *See* ECF No. 1-3 at 2.  However, the 302 Patent also notes that "[s]ubject to any disclaimer, the term of this patent is extended or adjusted under 35 U.S.C. 154(b) by 14 days." *See id.*; *see also* 35 U.S.C. § 154(b).  Thus, the 302 Patent would expire fourteen (14) days after the original expiration date, or on March 28, 2022. *See also* Reply at 9:27-28.

*See* Compl. at 5:5-11, 8:13-18.

Plaintiff alleges Defendant directly infringes, in violation of 35 U.S.C. § 271(a), "by making, using, offering to sell, selling, and/or importing into the United States, without authority, Accused Products that infringe at least claims 18, 19, 22 and 23 of the '302 Patent." Compl. at 8:13-17.  Plaintiff also alleges that Defendant has induced infringement of the 302 Patent in violation of 35 U.S.C § 271(b), "by actively inducing related entities, retailers, and/or customers to make, use, sell, offer to sell, and/or import, products covered by one or more claims of the '302 patent." *Id.* at 18:1-4.  Finally, Plaintiff also argues that Defendant commits contributory infringement of the 302 Patent, in violation of 35 U.S.C. § 271(c), by performing the below acts:

> offering to sell or selling within the United States and/or importing into the United States, without authorization, one or more components or products of which the '302 Patent covers with the knowledge (at least as of October 14, 2016 or the filing of the Original Complaint in Case No. 3:18-CV-00373 filed on February 16, 2018) that such component(s) are especially made or especially adapted for use in infringement of the '302 Patent and are not are staple articles of commerce suitable for substantial non-infringing use.

Compl. at 30:13-22.

Finally, Plaintiff also alleges that "the Accused Products underwent an extensive sales cycle that involved Defendant's substantial U.S.-based use of the Accused Devices." Compl. at 5:12-22.  Plaintiff pleads that "[b]ut for this U.S.-based infringing activity by Defendant, such design wins would not have been achieved, and Defendant would not have benefited from the resulting sales and associated revenue and profit." *Id.*

## B.   **Procedural History**

### 1.   *Pulse I*[4]

On February 16, 2018, Plaintiff first asserted the 302 Patent against Defendant in

---

[4]   All "ECF No." references in Section II(B)(1) only are to the docket in *Pulse I* rather than the docket in this case.

*Pulse I*, where it initially accused Defendant of infringing on four patents: U.S. Patent No. (1) 7,959,473 (the "473 Patent"), (2) 9,178,318 (the "318 Patent"), (3) 6,593,840 (the "840 Patent"), and (4) the 302 Patent. *See* ECF. No. 25-1 ¶ 14; *see also* Compl. at 4:8-11. On June 11, 2018, UDE filed its Answer along with eight counterclaims for non-infringement and invalidity of the 302, 473, 318, and 840 Patents. ECF. No. 13.

On January 17, 2020, Plaintiff filed a First Amended Complaint. ECF No. 61. However, on July 6, 2020, the Court granted Defendant's motion to dismiss the FAC *without prejudice* and granted leave to amend. Order, ECF No. 100. The Court found Plaintiff did not allege sufficient facts to establish a plausible claim for relief under the *Twombly*/*Iqbal* standard as to both induced and contributory infringement. *Id.* at 4-5.

On December 17, 2018, the Court granted Defendant's motion to stay *Pulse I*, pending *inter partes* review ("IPR") of all four patents-in-suit. Order, ECF No. 28 at 6-7. Later that month, the Patent Trial and Appeal Board ("PTAB") granted IPR of the 302 Patent. ECF No. 45 at 4:20-28. As such, on February 14, 2020, this Court granted a joint motion for dismissal of the claims related to the 302 Patent *without prejudice*. ECF No. 72. As to the other patents, however, the PTAB denied institution of a trial. ECF No. 46 at 5:23-27. Thus, on November 18, 2019, this Court granted Plaintiff's Motion to Lift the Stay as to the remaining patents-in-suit, which had been in place during the IPR. Order, ECF No. 52.

On July 16, 2020, Plaintiff filed a Second Amended Complaint, which became the operative complaint and alleged three claims for relief for direct, induced, and contributory infringement of the 473, 318, and 840 Patents. SAC. Shortly thereafter, on July 30, 2020, the Court issued its Claim Construction Order. ECF No. 107.

On March 15, 2021, the Court in *Pulse I* denied Plaintiff's motion for summary judgment, granted-in-part Defendant's motion for summary judgment, and ordered Plaintiff to show cause as to why summary judgment should not be granted in Defendant's favor by coming forward with evidence of infringing acts within the United States. *See* ECF No. 160. Two weeks later, on March 31, 2021, the Court dismissed the remaining

claims and granted summary judgment in Defendant's favor because Plaintiff had failed to submit evidence of Defendant's infringing activities within the United States. *Pulse Elecs., Inc. v. U.D. Elec. Corp.*, No. 318CV00373BENMSB, --- F. Supp. 3d ----, 2021 WL 1226470, at *1 (S.D. Cal. Mar. 31, 2021).

### 2.    *USPTO/PTAB*

On July 24, 2019, in the midst of *Pulse I*, the PTAB instituted IPR of the 302 Patent. Defendant's Motion to Dismiss, ECF No. 13 ("Mot.") at 5:26-27.

On July 22, 2020, the PTAB issued a final written decision finding claims 1, 3-9, and 11-16 unpatentable. Mot. at 6:3-4 (citing Exhibit "B" to Compl., ECF No. 1-4 at 3). However, during the IPR, Plaintiff submitted new claims 17-23 for addition to the 302 Patent in the event the PTAB found the original claims unpatentable. *Id.* at 6:5-7. In the Final Written Decision, the PTAB determined that some of the new claims (e.g., claims 18, 19, 22, and 23) were patentable. *Id.* at 6:7-8 (citing Exhibit "B" to Compl., ECF No. 1-4 at 46); *see also* Opposition, ECF No. 16 ("Oppo.") at 2:12-15.

On August 6, 2020, Plaintiff filed an appeal challenging the decision fining the original claims of the 302 Patent unpatentable. *See Pulse Electronics, Inv. v. U.D. Electronic Corp.*, United States Court of Appeals for the Federal Circuit Case No. 20-2129 (Fed. Cir. Aug., 6, 2020), ECF No. 1. Meanwhile, on August 20, 2020, Defendant filed a cross-appeal, challenging the PTAB's holding that claims 22 and 23 were patentable. *See U.D. Electronic Corp. v. Pulse Electronics, Inc.*, United States Court of Appeals for the Federal Circuit Case No. 20-2177 (Fed. Cir. Aug., 20, 2020), ECF No. 1. Defendant did not, however, challenge the PTAB's finding that amended claims 18 and 19 were patentable. *See id.*; *see also* Oppo. at 2:18-22. The Federal Circuit later consolidated the two appeals, and the parties remain in the briefing stage of the appeal. Mot. at 6:14-15.

### 3.    *Pulse II*

On August 27, 2020, before the Certificate had issued on the PTAB's IPR and while the cross-appeals of the PTAB's Final Written Decision were still pending, Plaintiff filed its complaint in this case, alleging infringement of amended claims 18, 19, 22, and 23 of

the 302 Patent.  Oppo. at 2:16-17; *see also* Compl.

On September 22, 2020, Defendant was served with the complaint, meaning Defendant's deadline to respond to the complaint was October 13, 2020.  ECF No. 6; *see also* FED. R. CIV. P. 12(a)(1)(A)(i).  On October 13, 2020, however, the Parties filed a Stipulation to Extend Time to Respond to the Complaint, seeking a ninety (90) day extension of time to respond in light of the pending IPR regarding the 302 Patent, which the Court granted on October 14, 2020.  ECF No. 7 at 2; *see also* Order, ECF No. 8 (ordering that Defendant's responsive pleading would be due by January 11, 2021).

On January 13, 2021,[5] Defendant filed its Motion to Dismiss.  *See* Mot.

On January 27, 2021, Plaintiff opposed Defendant's Motion to Dismiss.  Oppo.  On February 9, 2021, Defendant replied.  Reply, ECF No. 18 ("Reply").

## III.   **LEGAL STANDARD**

A defendant may seek dismissal of a claim or lawsuit by asserting the defense of lack of subject matter jurisdiction.  FED. R. CIV. P. 12(b)(1).  If the Court, after review of motion to dismiss brought pursuant to Rule 12(b)(1) of the FRCP ("Rule 12(b)(1)"), or at any other time during a lawsuit, determines "that it lacks subject matter-jurisdiction, the court must dismiss the action."  FED. R. CIV. P. 12(h)(3).  "Dismissal for lack of subject matter jurisdiction is appropriate if the complaint, considered in its entirety, on its face fails to allege facts sufficient to establish subject matter jurisdiction."  *In re Dynamic Random Access Memory (DRAM) Antitrust Litig.*, 546 F.3d 981, 984-85 (9th Cir. 2008).

"Although the defendant is the moving party in a motion to dismiss brought under

---

[5]      Defendant's Motion appears to have been submitted after its deadline to respond for two reasons.  First, extensions may only be secured by court approval even if both parties stipulate to an extension.  S.D. Cal. Civ. R. 12.1.  Thus, when the extension was not granted by the day Defendant's responsive pleading was due (October 13, 2020), Defendant failed to timely respond.  Assuming the Court's Order granting the extension remedied the initial untimeliness, Defendant still failed to file its responsive pleading by the court-ordered deadline of January 11, 2021 by waiting until January 13, 2021 to file this Motion.  Plaintiff, however, did not oppose Defendant's Motion on this ground, and given the Court's preference for deciding cases on the merits, it, nonetheless, considers the Motion.

Rule 12(b)(1), the plaintiff is the party invoking the court's jurisdiction." *Brooke v. Kashl Corp.*, 362 F. Supp. 3d 864, 871 (S.D. Cal. 2019).  "As a result, the plaintiff bears the burden of proving that the case is properly in federal court." *Id.*; *see also DRAM*, 546 F.3d at 984.  To state a claim for relief invoking a federal court's subject-matter jurisdiction, a pleading must allege "a short and plain statement of the grounds for the court's jurisdiction." FED. R. CIV. P. 8(a)(1).  The allegations of subject matter jurisdiction must plead facts, rather than mere legal conclusions, establishing a plausible basis for federal subject matter jurisdiction.  *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544 (2007); *Ashcroft v. Iqbal,* 556 U.S. 662 (2009).

Where a defendant seeks dismissal of a case pursuant to FRCP 12(b)(1), the "jurisdictional attack may be facial or factual." *Safe Air for Everyone v. Meyer*, 373 F.3d 1035, 1039 (9th Cir. 2004).  In a facial attack, the moving party asserts that, even assuming the truth of the plaintiff's allegations, "the allegations contained in a complaint are insufficient on their face to invoke federal jurisdiction." *Safe Air*, 373 F.3d at 1039.  In a factual attack, the moving party "disputes the truth of the allegations that, by themselves, would otherwise invoke federal jurisdiction." *Id.*

If a defendant advances "a factual attack on subject matter jurisdiction, the defendant may introduce testimony, affidavits, or other evidence to dispute the truth of the allegations that, by themselves, would otherwise invoke federal jurisdiction." *Terenkian v. Republic of Iraq*, 694 F.3d 1122, 1131 (9th Cir. 2012) (internal quotations omitted). "Under these circumstances, 'no presumptive truthfulness attaches to plaintiff's allegations.'" *Id.* "Once the moving party has converted the motion to dismiss into a factual motion by presenting affidavits or other evidence properly brought before the court, the party opposing the motion must furnish affidavits or other evidence necessary to satisfy its burden of establishing subject matter jurisdiction." *Safe Air*, 373 F.3d at 1039.

## IV.  **DISCUSSION**

Defendant argues that Plaintiff's complaint must be dismissed because Plaintiff's entire lawsuit is premised on new claims being added to the 302 Patent, which have not yet

been added.  Mot. at 5:5-10.  As a result, until the new claims are added, Plaintiff has no patent rights pertaining to the 302 Patent, and therefore, lacks standing to pursue its claims. *Id.* at 5:13-16.  Defendant correctly points out that, if a plaintiff lacks standing to pursue the plaintiff's claims, then, the Court also lacks subject-matter jurisdiction.  *Id.*

Plaintiff responds by arguing that the Court should deny Defendant's motion "because: (i) Pulse possessed standing to bring the present suit because issuance of the certificate is imminent for at least asserted amended claims 18 and 19 of the '302 Patent; (ii) the [Federal Circuit's] decision will issue before substantial litigation begins; and (iii) judicial economy will be served."  Oppo. at 2:4-6, 3:15-18.  Alternatively, Plaintiff asks the Court to "stay this litigation until the [Federal Circuit] decides the entire appeal of the '302 Patent." *Id.* at 3:19-20.

In its reply, Defendant argues that Plaintiff's Opposition "does not counter, and cannot counter, the single decisive fact in this case: asserted claims 18, 19, 22, and 23 are not yet part of the '302 Patent."  Reply at 4:3-5.  Defendant contends that the Court should dismiss this case for three reasons: First, Plaintiff does not dispute "that it lacks the touchstone requirement for standing: a right to exclude others."  Reply at 5:11-12.  Second, Plaintiff fails to show any concrete and particularized harm that is actual or imminent because (a) Plaintiff miscalculates when the asserted claims will be added to the 302 Patent (if ever), (b) the 302 Patent will likely expire before the asserted claims are added to it, and (c) Plaintiff's arguments about judicial economy fail as a matter of law.  Reply at 6:3-4, 17-18, 8:18-19, 9:20-21.  Third, Plaintiff's request for a stay cannot resolve the standing deficiency, especially because "[t]he present case will likely be permanently mooted before it ever becomes ripe." *Id.* at 4:26, 10:25-26.

As outlined below, the Court finds it appropriate to **GRANT** Defendant's Motion to Dismiss because the Court lacks subject-matter jurisdiction over this case.  Lacking subject-matter jurisdiction, the Court also **DENIES** Plaintiff's improper request for a stay.

### A.  <u>Defendant's Motion to Dismiss for Lack of Jurisdiction</u>

Plaintiff argues "this Court has original and exclusive subject matter jurisdiction

pursuant to 28 U.S.C. §§ 1331 and 1338(a)."  Oppo. at 3:25-26; *see also* 28 U.S.C. §§ 1331 (vesting district courts with "original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States"), 1338(a) (providing that "district courts shall have original jurisdiction of any civil action arising under any Act of Congress relating to patents").  While the present patent dispute falls within the purview of a civil action arising under patent laws, Article III of the United States Constitution limits the subject-matter jurisdiction of federal courts to justiciable "cases" and "controversies."  U.S. CONST., ART. III, § 2.  The United States Supreme Court has held that for a case to meet the justiciability requirement, a plaintiff must show (1) standing; (2) that the case is ripe; (3) the case is not moot; and (4) the case does not involve a political question.  *See, e.g.*, *DaimlerChrysler Corp. v. Cuno*, 547 U.S. 332, 335 (2006) ("The doctrines of mootness, ripeness, and political question all originate in Article III's 'case' or 'controversy' language, no less than standing does.").  Defendant asks the Court to dismiss this case because (1) Plaintiff lacks standing; (2) the case is not ripe; and (3) by the time the case is ripe, Plaintiff's claims may be moot.  Reply at 4:5-26.  Plaintiff's opposition boils down to contending that it "has standing because the issuance of the certificate [and therefore, standing] is imminent."  Oppo. at 4:14-15.  Defendant responds that Plaintiff fails to show any harm that is "concrete and particularized" and "actual or imminent" because (1) Pulse miscalculates when the asserted claims will be added to the 302 Patent; (2) the 302 Patent will likely expire before the asserted claims are added to it; and (3) Plaintiff's arguments about substantial litigation and judicial economy are misplaced.  Reply at 6:3-4, 17-18, 8:18-19, 9:20-21.

The Court considers the jurisdictional issues first given a dismissal for lack of jurisdiction renders all other claims moot.  *See Ruhrgas AG v. Marathon Oil Co.,* 526 U.S. 574, 583 (1999) ("Article III generally requires a federal court to satisfy itself of its jurisdiction over the subject matter before it considers the merits of a case.").  As outlined below, the Court determines it must dismiss Plaintiff's claims because (1) Plaintiff lacks

constitutional standing,[6] (2) Plaintiff's claims at issue are not ripe; and (3) by the time the claims become ripe, they will likely be moot.

## 1.    *Plaintiff Lacks Constitutional Standing*

When a defendant challenges a court's subject matter jurisdiction pursuant to Rule 12(b)(1), the plaintiff bears the burden of establishing standing to sue. *Ortho Pharm. Corp. v. Genetics Inst., Inc.*, 52 F.3d 1026, 1032-33 (Fed. Cir. 1995). "A party must establish standing, *i.e.* show that its case or controversy is amenable to resolution by a federal court, by demonstrating that it suffers an injury which can be fairly traced to the defendant and likely redressed by a favorable judgment." *Lone Star Silicon Innovations LLC v. Nanya Tech. Corp.*, 925 F.3d 1225, 1234 (Fed. Cir. 2019) (citing *Lujan*, 504 U.S. at 560-61). Courts have distilled constitutional standing requirements as demanding that a plaintiff plead (1) a concrete and particularized injury in fact that is actual or imminent (as opposed to conjectural or hypothetical); (2) a causal connection between the alleged injury and the defendant's challenged conduct; and (3) a likelihood that a favorable decision will redress

---

[6]    There are two types of standing: The first is referred to as prudential or statutory standing while the second variety of standing is constitutional standing. *See Sec'y of State of Md. v. Joseph H. Munson Co.*, 467 U.S. 947, 955 (1984). "Constitutional [or 'Article III'] standing concerns whether the plaintiff's personal stake in the lawsuit is sufficient to make out a concrete 'case' or 'controversy' to which the federal judicial power may extend under Article III, § 2." *Pershing Park Villas Homeowners Ass'n v. United Pac. Ins. Co.*, 219 F.3d 895, 899 (9th Cir.2000); *see also Lujan v. Defenders of Wildlife,* 504 U.S. 555, 559-60 (1992). Constitutional standing limitations are jurisdictional, cannot be waived, and a court must resolve doubts as to constitutional standing even if *sua sponte*. *See Indep. Living Ctr. of S. Cal., Inc. v. Shewry,* 543 F.3d 1050, 1064-65 (9th Cir. 2008). Prudential or statutory standing, on the other hand, is not jurisdictional and refers to the requirement that "[t]he plaintiff generally must assert his own legal rights and interests[ ] and cannot rest his claim to relief on the legal rights or interests of third parties." *Munson*, 467 U.S. at 955; *see also City of Los Angeles v. Cty. of Kern*, 581 F.3d 841, 845 (9th Cir. 2009) (noting that prudential standing consists of "judicially self-imposed limits on the exercise of federal jurisdiction, founded in concern about the proper—and properly limited—role of the courts in a democratic society") (internal quotations and citations omitted). Defendant's challenge appears to be limited to constitutional standing; however, as discussed below, it appears prudential standing concerns exist in this case as well.

that injury. *Mojave Desert Holdings, LLC v. Crocs, Inc.*, 987 F.3d 1070, 1078 (Fed. Cir. 2021); *Massachusetts v. EPA*, 549 U.S. 497, 517 (2007). The plaintiff must establish standing "in the same way as any other matter on which the plaintiff bears the burden, *i.e.*, with the manner and degree of evidence required at the successive stages of the litigation." *Lujan*, 504 U.S. at 561.

As applies to patent cases, "[p]atents and the rights they confer are creatures of statute." *Invenergy Renewables LLC v. United States*, 422 F. Supp. 3d 1255, 1271 (Ct. Int'l Trade 2019), *modified,* 476 F. Supp. 3d 1323 (Ct. Int'l Trade 2020). Section 2 of the Leahy-Smith America Invents Act (the "AIA") vests the United States Patent and Trademark Office with the power to grant and issue patents, 35 U.S.C. § 2, while section 154 vests patent owners with "the right to exclude others from making, using, offering for sale, or selling [an] invention," 35 U.S.C. § 154(a). *See also* 35 U.S.C. §§ 271 ("[W]hoever without authority makes, uses, offers to sell, or sells any patented invention . . . infringes the patent."); 281 ("A patentee shall have remedy by civil action for infringement of his patent."); 100(d) ("The word 'patentee' includes not only the patentee to whom the patent was issued but also the successors in title to the patentee."). Accordingly, in patent infringement suit, "the touchstone of constitutional standing . . . is whether a party can establish that it has an exclusionary right in a patent that, if violated by another, would cause the party holding the exclusionary right to suffer legal injury." *WiAV Sols. LLC v. Motorola, Inc.*, 631 F.3d 1257, 1265 (Fed. Cir. 2010). "'Exclusionary rights' involve the ability to exclude others from practicing an invention or to 'forgive activities that would normally be prohibited under the patent statutes.'" *Lone Star*, 925 F.3d at 1234 (quoting *Morrow v. Microsoft Corp.*, 499 F.3d 1332, 1342 (Fed. Cir. 2007)).

At the pleading stage, Plaintiff must demonstrate its standing to pursue this lawsuit by general factual allegations. *See, e.g.*, *Lone Star*, 925 F.3d at 1234 ("At the pleading stage, 'general factual allegations . . . may suffice' to satisfy these [standing] requirements."). Plaintiff's complaint seeks relief under the AIA. Compl. at ¶ 5. However, the Court finds that Plaintiff has failed to show it can meet any of the three requirements

-12-

for constitutional standing.

a. <u>*Actual or Imminent Injury at the Time of Complaint*</u>

Defendant argues that "[t]he patent statutes and caselaw make clear that new claims presented during *inter partes* review do not become part of the patent with the issuance of the final written decision, but rather with the issuance of the *inter partes* review certificate." Mot. at 9:1-4. As a result, until Plaintiff's new claims become a part of the 302 Patent, Plaintiff has not "actual or imminent" injury to create standing. *Id.* Plaintiff responds that it "has standing because the issuance of the [IPR] certificate is imminent." Oppo. at 4:14-15. In response, Defendant argues that "[u]nless and until the Patent Office issues the *inter partes* review certificate adding the asserted claims to the '302 Patent, there is no standing for the present case and it must be dismissed." Reply at 5:28-6:2.

"[I]n a patent infringement case, the actual or threatened injury required by Article III exists solely by virtue of the Patent Act." *Invenergy*, 422 F. Supp. 3d at 1271. The language of section 154 is straightforward and provides a patent owner with the right to exclude others from "making, using, offering for sale, and selling" a patented invention. *See id.* "Constitutional injury in fact occurs when a party performs at least one prohibited action with respect to the patented invention that violates these exclusionary rights." *Morrow*, 499 F.3d at 1339 (citing *Lujan,* 504 U.S. at 560-61; *see also WiAV*, 631 F.3d at 1264-65 ("[A] party holding one or more of those exclusionary rights—such as an exclusive licensee—suffers a legally cognizable injury when an unauthorized party encroaches upon those rights and therefore has standing to sue."). "The party holding the exclusionary rights to the patent suffers legal injury in fact under the statute." *Morrow*, 499 F.3d at 1339.

In this case, the Court finds that because new claims do not become a part of the patent until the USPTO issues the IPR certificate, Plaintiff lacked any federal patent rights at the time it filed its complaint. Thus, even *assuming arguendo* Defendant infringed on the 302 Patent, Plaintiff had suffered no actual injury at the time of filing its complaint. Moreover, Plaintiff's argument that injury is imminent is too conjectural to create standing.

-13-

i.    New Claims Are Not Part of the Patent Until the USPTO Issues the IPR Certificate

Plaintiff alleges in its complaint that it may assert new claims 18, 19, 22, and 23 based on the Final Written Decision of the PTAB declaring those claims patentable. Complaint at 3:19-23.  Defendant argues that the Court should dismiss this case because a final written decision does not add new claims to a patent, only the IPR certificate does, so because Plaintiff had no such certificate when it filed suit (and still lacks one), Plaintiff never had standing at the time it filed the Complaint.  Mot. at 9:1-4.  Plaintiff responds that Defendant "fails to cite a single case or statute that supports a Rule 12(b)(1) dismissal because the Director had not issued a certificate where amended claims from a final written decision are not on appeal."  Oppo. at 4:9-12.  Plaintiff contends "[t]his is because the certificate issues as a matter of course and the Director can not [sic] alter the final written decision of the Board."  *Id.* at 12-14 (citing 35 U.S.C. § 318(b); *Arthrex, Inc. v. Smith & Nephew, Inc.*, 941 F.3d 1320, 1329 (Fed. Cir. 2019)).  In its reply brief, Defendant argues that "Pulse does not have the right to exclude anyone, including UDE, from practicing those claims, so Pulse does not have standing to assert them."  Reply at 4:5-7.  Defendant points out that Plaintiff's Opposition Brief fails to cite to "any case[ ] where a plaintiff was able to maintain a suit on claims not yet issued in a patent."  Reply at 5:25-26.

The AIA allows any person other than the patent owner to institute an IPR of a patent.  35 U.S.C. § 311(a).  The petition may seek cancellation of one or more claims on the grounds that the claim(s) fail the standards for patentability, such as novelty or nonobviousness.  35 U.S.C. § 311(b).  Notably, the Under Secretary of Commerce for Intellectual Property and Director of the United States Patent and Trademark Office (the "Director"), 35 U.S.C. § 3, may not authorize IPR unless the Director determines that the information presented in the petition for review and any subsequent response demonstrates "a reasonable likelihood that the petitioner would prevail with respect to at least 1 of the claims challenged in the petition."  35 U.S.C. § 314(a).

Once the Director authorizes IPR, the PTAB examines the patent's validity.  35

-14-

U.S.C. § 316(c).  However, as was done by Plaintiff in this case, the patent owner may file a motion to amend the patent by proposing "a reasonable number of substitute claims." 35 U.S.C. § 316(d)(1)(B).  Nonetheless, "[a]n amendment under this subsection may not enlarge the scope of the claims of the patent or introduce new matter." 35 U.S.C. § 316(d)(3).  Once IPR proceedings begin, if they are not settled or dismissed, the PTAB must "issue a final written decision with respect to the patentability of any patent claim challenged by the petitioner and any new claim added under section 316(d)." 35 U.S.C. § 318(a).  The PTAB must issue this "final written decision no later than a year after it notices the institution of inter partes review, but that deadline can be extended up to six months for good cause." 35 U.S.C. §§ 316(a)(11), 318(a); *see also Oil States Energy Servs., LLC v. Greene's Energy Grp., LLC*, 138 S. Ct. 1365, 1371-72 (2018).

If the PTAB issues a final written decision and the time for appeal expires, "the Director shall issue and publish a certificate canceling any claim of the patent finally determined to be unpatentable, confirming any claim of the patent determined to be patentable, and incorporating in the patent . . . any new or amended claim determined to be patentable." 35 U.S.C. § 318(b).  "Any proposed amended or new claim determined to be patentable and incorporated into a patent following an inter partes review," like the claims Plaintiff seeks to add to the 302 Patent, "shall have the same effect as that specified in section 252 for reissued patents." 35 U.S.C. § 318(c).  Section 252, in turn, confirms this means an accused infringer may continue infringing activities until the certificate issues:

> A reissued patent shall not . . . affect the right of any person . . . who, prior to the grant of a reissue, made, purchased, offered to sell, or used within the United States, or imported into the United States, anything patented by the reissued patent, to continue the use of, to offer to sell, or to sell to others to be used, offered for sale, or sold, the specific thing so made, purchased, offered for sale, used, or imported unless the making, using, offering for sale, or selling of such thing infringes a valid claim of the reissued patent which was in the original patent.

35 U.S.C. § 252.

In other words, when a final decision adds new claims to a patent, as has occurred in this

-15-

case, an accused infringer, like Defendant, has the right to continue alleged infringing activities until the IPR certificate issues unless the activities infringe a valid claim of the reissued patent which was in the original patent. *See id.*

In this case, the PTAB issued its final written decision on July 22, 2020. Mot. at 6:3-4. However, both parties have appealed the decision pursuant to 35 U.S.C. § 319. *Id.* at 10:14-18. The Court takes judicial notice, *sua sponte*, of the fact that in 2020, the United States Court of Appeals took a median of fourteen (14) months to dispose of appeals from the PTAB. *See* www.cafc.uscourts.gov/sites/default/files/the-court/statistics/06_Med_Disp_Time_MERITS_table.pdf; *see also Khoja v. Orexigen Therapeutics, Inc.*, 899 F.3d 988, 1001 (9th Cir. 2018), *cert. denied sub nom. Hagan v. Khoja*, 139 S. Ct. 2615 (2019) (noting that "[c]ourts may take judicial notice of some public records, including the records and reports of administrative bodies"); FED. R. EVID. 201. Because the PTAB cannot issue a certificate until the appeals conclude, and both parties filed their appeals in August 2020, according to the Federal Circuit's statistics, the certificate would be unlikely to issue before October 2021. Thus, the 302 Patent claims are unlikely to be "final" until at least October 20, 2021 (fourteen months from the date of Defendant's appeal to the Federal Circuit regarding the PTAB's final decision allowing Pulse to add the new claims).

        ii.   <u>Because the UPSTO Has Not Issued the IPR Review Certificate, the New Claims Asserted Under the Complaint Are Not Part of the 302 Patent Yet</u>

Defendant argues that because the PTAB "has indisputably not issued a certificate pursuant to 35 U.S.C. § 318(b), . . . new claims 18, 19, 22, and 23 are not yet part of the '302 Patent." Mot. at 10:10-12. Defendant elaborates that because both parties have appeals of the Final Decision pending before the Federal Circuit, "[u]ntil those two appeals terminate, the Patent Office will not, and cannot, issue the *inter partes* review certificate." *Id.* at 10:18-19. Pulse responds that it adequately pled Defendant's infringing activity in the complaint, Oppo. at 4:4-6 (citing Compl. at ¶¶ 21-72), using Claim 19, which Defendant did not appeal, "as the basis for its infringement analysis of UDE products," *id.* at 4:26-27 (citing Compl. at ¶¶ 35-49). Plaintiff also argues that (1) "at least claims 18 and 19 will

-16-

survive the CAFC appeal because UDE did not challenge them," Oppo. at 4:1-4; (2) because "[t]he Director cannot, on his own, *sua sponte* review or vacate a final written decision" and Defendant did not appeal Claims 18 and 19, those claims will become part of the 302 Patent, and Defendant has no basis to move to dismiss those claims, *id.* at 5:20-23; and (3) even though claims 22 and 23 of the 303 Patent are challenged by Defendant on appeal, the Federal Circuit "has an affirmance rate of about 80%, therefore claims 22 and 23 are very likely to remain intact for the present suit," *id.* at 4:24-5:1.

Even accepting Plaintiff's argument that Claims 18 and 19 will survive at face value, they have not yet survived, and as it stands today, Plaintiff presently has no patents rights whatsoever as relates to the 302 Patent except the original 302 Patent claims, which were cancelled (although the cancellation will not become effective until the IPR certificate issues) and are not asserted as infringed in the Complaint. Even if the Federal Circuit has an affirmance rate of about 80%, district courts are not in the business of wagering whether a case will fall within a statistic or predicting the outcome of the Federal Circuit. Plaintiff's argument that Claims 18 and 19, which were confirmed by the final written decision and not appealed by Defendant, vest it with patent rights is simply incorrect.

    iii. <u>Plaintiff Has No Actual or Imminent Injury for Claims That Are Not Yet Part of the 302 Patent.</u>

Defendant argues that Plaintiff lacks standing because until the new claims in the 302 Patent exist, which occurs when the PTAB issues the certificate, Defendant can continue any alleged infringing activity, and Plaintiff has no "injury" sufficient to provide it with standing to create federal subject matter jurisdiction. Mot. at 11:1-2. Plaintiff responds by conclusorily arguing that it has standing because it has an injury that is "(1) concrete, particularized, and actual or imminent; (2) traceable to UDE's infringement; and (3) can be redressed by a favorable ruling." *Id.* at 2:6-8. Plaintiff contends that it "owned the '302 Patent when the Complaint was filed[7] and therefore possessed standing to bring

---

[7] On the contrary, the record is, in fact, devoid of evidence indicating Plaintiff owns the 302 Patent. While the plaintiff in this case is Pulse Electronics, Inc., the record indicates

the present suit." Oppo. at 3:23-25 (citing *Akazawa v. Link New Tech. Int'l, Inc.*, 520 F.3d 1354, 1355 (Fed. Cir. 2008)). Defendant replies that Plaintiff's attempt to explain away its lack of standing by arguing its standing is imminent "proves the point of just how speculative its allegations are." Reply at 4:10-18.

Standing requires injury in fact, which must be both "concrete and particularized" as well as "actual or imminent," not merely "conjectural or hypothetical." *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1548 (2016). "For an injury to be 'particularized,' it 'must affect the plaintiff in a personal and individual way.'" *Id.* However, the injury must also be concrete, which requires the injury "to be '*de facto*'; that is, it must actually exist." *Id.* The Supreme Court has clarified that this means "'real' and not 'abstract.'" *Id.*

Defendant argues that in this case, "Pulse never alleges any 'actual' harm, and thus apparently recognizes that no actual harm exists." Reply at 6:8-9. According to Defendant, "[i]nstead, Pulse alleges that because the Patent Office may eventually add some of the asserted claims to the '302 Patent, the harm is 'imminent.'" *Id.* at 6:9-11 (citing Oppo. at 2:15-17, 3:1-4, 3:14-15). In debating standing, both parties discuss two patent-infringement cases, which also involved motions to dismiss for lack of jurisdiction: *Hologic, Inc. v. Minerva Surgical, Inc.*, 325 F. Supp. 3d 507 (D. Del. 2018), *aff'd,* 957 F.3d 1256 (Fed. Cir. 2020) and *Seaweed, Inc. v. DMA Prod. & Design & Mktg. LLC.*, 219 F.

_____

the owner of the patent is Pulse Engineering, Inc. *See* ECF No. 1-3 at 2 (showing the 302 Patent as being invented by Aurello J. Gutierrez and Dallas A. Dean, and later assigned to Pulse Engineering, Inc.). In order to assert rights over the 302 Patent, Plaintiff, Pulse Electronics, Inc., must allege an ownership interest in the 302 Patent. However, Plaintiff has not alleged how Pulse Electronics, Inc. and Pulse Engineering, Inc. are related or associated. Pulse's Notice of Party with Financial Interest also does not show any relation to Pulse Engineering, Inc., nor is any relation explained within the Complaint. ECF Nos. 1 and 5. As a result, separate and aside from the Court's reasons for dismissing this case outlined below, it appears Plaintiff may not even be the appropriate party to assert the patent rights in dispute. *But see Lone Star Silicon Innovations LLC v. Nanya Tech. Corp.*, 925 F.3d 1225, 1234-36 (Fed. Cir. 2019) (holding that even though the plaintiff did not possess all substantial rights in the asserted patents, its allegations still satisfied the standing requirements of Article III).

Supp. 2d 551 (S.D.N.Y. 2002).  *See* Mot. at 11:15-27; Oppo. at 5:7-22.  The Court discusses each, in turn, and finds that although neither case is binding on this Court, they both persuasively confirm the Court must dismiss the present case.

First, in *Seaweed*, the Southern District of New York dismissed a patent infringement claim for a device because at the time the plaintiff filed its complaint, the patent claims had not yet come into existence.  219 F. Supp. 2d at 555-56.  The *Seaweed* plaintiff sued the defendants for alleged infringement of "a laptop computer support surface device that Seaweed had designed, called the 'Lap Lounger.'"  *Id.* at 552-53.  However, even though the plaintiff received a Certificate of Allowability on its patent application before filing suit, the USPTO did not grant the patent application until after the plaintiff filed its complaint.  *Id.* at 553.  The court granted the defendants' motion to dismiss the plaintiff's claims pursuant to Rules 12(b)(2) and 12(b)(6) of the FRCP *without prejudice* to refiling because "the Certificate of Allowability did not give Seaweed standing to sue" for infringement as the patent had not yet issued.  *Id.* at 555-56.  Rather, because "[p]atent rights vest upon issuance, and are not retroactive," a patent holder has "no action for patent infringement prior to the issuance of a patent."  *Id.* (internal citations omitted).  The court reasoned that "to provide retroactive effect or pre-issuance standing to sue would unduly increase the in terrorem power of every patent application, regardless of its particular merit."  *Id.* at 555.  However, the court also pointed out that "[b]ecause a patent subsequently issued on the Lap Lounger and Seaweed introduced evidence in support of its allegations that certain defendants [had] infringed on those patent rights after the patent's issuance, the dismissal was ordered without prejudice."  *Id.* at 556.

Later, in 2018, one of the two *Hologic* plaintiffs owned various patents related to instruments and procedures for endometrial ablation and sued for alleged infringement of its patents-in-suit.  325 F. Supp. 3d at 513.  The defendant, however, moved to dismiss the plaintiff's claims for infringement of one of the patents-in-suit under Rule 12(b)(1) by arguing that a final written decision of the PTAB in an IPR "extinguishe[d] any cause of action [the plaintiff] may have had with respect to its asserted . . . patent."  *Id.* at 517.

-19-

However, as Plaintiff has done in this case, the *Hologic* plaintiff had appealed the PTAB's decision, so the court concluded that it had to deny the motion to dismiss because "[t]he Patent Office cannot cancel claims of patents until after appeal." *Id.* at 518.  The court reasoned that because the PTAB's finding was on appeal, the patent had not yet been cancelled, so the case was not yet moot, and the PTAB's finding did "not have preclusive effect as to this action unless and until the appeal is resolved." *Hologic, Inc. v. Minerva Surgical, Inc.*, 957 F.3d 1256, 1262 (Fed. Cir. 2020), *reh'g denied* (July 22, 2020), *cert. granted,* 141 S. Ct. 975 (2021), and *cert. denied,* 141 S. Ct. 1068 (2021).

Defendant argues that similar to *Seaweed* and *Hologic*, Plaintiff's "new claims 18, 19, 22, and 23 may eventually be added to the '302 Patent," at which point, "Pulse would have the right to exclude others from using the inventions recited in those claims." Mot. at 12:1-3.  However, "those claims are not yet part of the '302 Patent, and Pulse currently possesses no such right of exclusion." *Id.* at 12:3-4.  Plaintiff responds by arguing that "*Hologic* and *Seaweed* are not analogous." Oppo. at 5:5-6.  Plaintiff contends this case differs from *Seaweed* because at the time Plaintiff filed its complaint, the 302 Patent had issued, unlike in *Seaweed*, where the patent holder only had a certificate of appealability, but the patent had not yet issued.  219 F. Supp. 2d at 555.  Plaintiff argues that its "Complaint is based upon unchallenged claims from a final written decision by the Board, not an unissued patent application." Oppo. at 5:21-22.  Plaintiff also points out that in *Hologic*, the plaintiff had appealed the PTAB decision refusing to grant the amended claims whereas "amended claims of the '302 Patent were granted, and amended claims 18 and 19 are *not* on appeal." *Id.* at 5:7-15.  Thus, "Plaintiff argues that it "has standing, *inter alia*, because the Director 'shall' issue the certificate for at least the amended claims 18 and 19 if the '302 Patent." *Id.* at 5:23-24.  However, Defendant replies that Plaintiff "cites no legal authority supporting this interpretation of 'imminent'" or "allowing a party to maintain a suit based on a claim not yet issued in a patent." Reply at 6:11-13.

The Court finds that both *Seaweed* and *Hologic* align with the relevant provisions of the AIA by reiterating that until both the time for appeal has expired or the appeal has been

-20-

finalized *and* the IPR certificate issues, the patent owner only has the original patent rights. In this case, like the *Hologic* plaintiff, Plaintiff's original 302 Patent claims were cancelled by the PTAB, thus, had Plaintiff sued on the original patent claims, like the *Hologic* plaintiff had, the Court would be required to deny Defendant's Motion to Dismiss because the cancelled claims will not be cancelled until the appeal is finalized, and the certificate issues. 325 F. Supp. 3d at 518. However, Plaintiff sued under the amended claims, which have not yet been added to the 302 Patent, so like the *Seaweed* plaintiff, which sued before the patent rights vested, this Court must grant Defendant's motion to dismiss. 219 F. Supp. 2d at 555-56.

Finally, Defendant notes that "[b]eyond not being 'imminent,' the indeterminate date for issuance of the certificate also shows the lack of a 'concrete and particularized' harm" because "Pulse will not be able to seek damages for any activity by UDE prior to the date that the Patent Office issues the certificate." Reply at 8:19-22. This is because as discussed above, even if Plaintiff proves that Defendant's accused products infringe on the 302 Patent, and that Defendant performed domestic acts of infringement, Plaintiff cannot recover for any such infringing acts until the IPR certificate issues. *See* 35 U.S.C. §§ 252, 318(c); *see also Bloom Eng'g Co., Inc. v. N. Am. Mfg. Co., Inc.*, 129 F.3d 1247, 1250 (Fed. Cir. 1997) ("Unless a claim granted or confirmed upon reexamination is identical to an original claim, the patent can not [sic] be enforced against infringing activity that occurred before issuance of the reexamination certificate." (interpreting reexamination statute, which applies the same standard as 35 U.S.C. § 252)). Thus, at the time Plaintiff filed its Complaint, Plaintiff had no concrete or particularized injuries. Reply at 6:13-15.

As such, at the time of filing its complaint, Plaintiff had not right to exclude others from using Claims 18, 19, 22, and 23 of the 302 Patent because they are not yet a part of the patent owned by Pulse Engineering, Inc. Thus, Plaintiff does not yet have standing to assert claims 18, 19, 22, and 23 of the '302 Patent, the only claims for which the Complaint pleads infringement. Because Plaintiff has failed to show the first requirement for standing (*i.e.*, actual injury), the Court refrains from analyzing the latter two requirements for

-21-

standing (*i.e.*, a causal connection and redressability) given even if Plaintiff satisfied those elements, Plaintiff would still lack standing.  Because the Court dismisses this case without leave to amend, however, the Court does analyze the other two requirements for justiciability, ripeness and mootness, because even if Plaintiff had standing, those requirements have not been satisfied either.

## 2.  *Plaintiff's Requested Injunctive Relief Is Not Ripe*

For a case to meet Article III's justiciability requirements, it "must be 'ripe'—not dependent on 'contingent future events that may not occur as anticipated, or indeed may not occur at all.'" *Trump v. New York*, 141 S. Ct. 530, 535 (2020) (quoting *Texas v. United States*, 523 U.S. 296, 300 (1998)).  The role of federal courts "is neither to issue advisory opinions nor to declare rights in hypothetical cases, but to adjudicate live cases or controversies consistent with the powers granted the judiciary in Article III of the Constitution." *Skyline Wesleyan Church v. California Dep't of Managed Health Care*, 968 F.3d 738, 746 (9th Cir. 2020).  "Standing and ripeness are among the justiciability doctrines that help us adhere to that role." *Id.* at 746.

Defendant argues that because Plaintiff does not yet have any valid patent rights, Plaintiff's claims of patent infringement are not yet ripe, and that "when all necessary steps are accounted for, this dispute will not be ripe until sometime between March 2022 and July 2022," or "between 19 and 23 months from Pulse's filing of the Complaint on August 27, 2020."  Reply at 4:16-21.  Plaintiff responds that Federal Circuit statistics place the time in months from the docketing date to the disposition date for appeals from the USPTO "between ten (10) and fifteen (15) months."  Oppo. at 6:1-3.  As a result, Plaintiff argues the Court should not dismiss the Complaint "because the [Federal Circuit] will decide any issues with the claims that are subject to the appeal (not amended claims 18 and 19) before substantial work in the litigation begins" due to the fact that: (1) "[t]he docketing date of the appeal was August 20, 2020," so "a disposition in the appeal will likely occur sometime between July 2021 and December 2021," *id.* at 6:3-13, and (2) "[t]he median time from filing to trial in this District for civil cases is 36.8 months," so "the parties will have a

-22-

decision from the CAFC well before anything substantive (i.e., Markman, Expert Disclosures, etc.) occurs in the litigation," *id.* at 6:7-10.  Defendant responds that "Pulse significantly underestimates how long it will take for the asserted claims to be added to the '302 Patent."  Reply at 6:18-19.

First, although Plaintiff argues the average time for disposition is between ten (10) to fifteen (15) months, Oppo. at 6:1-3, this Court has already taken judicial notice of the fact that most recently (*i.e.*, 2020), the median time from docketing to disposition for appeals from the USPTO was fourteen (14) months.[8]

Second, a decision on the merits does not terminate an appeal; rather, the issuance of the mandate does.  Reply at 7:9-11; *cf. Al Najjar v. Ashcroft*, 273 F.3d 1330, 1337–38 (11th Cir. 2001) (noting that "the issuance of a mandate in a case automatically terminates a stay entered pending resolution of the appeal); *see also Texas & N. O. R. Co. v. Bhd. of R. R. Trainmen*, 307 F.2d 151, 163 (5th Cir. 1962) ("[W]hen this Court's mandate issues, the appeal will no longer be pending and a final order on appeal will have been entered.").  Defendant argues the Federal Circuit's "'time to disposition' calculation fails to account for the time between a decision by the panel and the issuance of mandate by the court," which Defendant estimates would occur between November and December of 2021.  Reply at 7:5-6.  Because this case was docketed on August 20, 2020, Oppo. at 6:3-5, fourteen (14) months later would mean the Federal Circuit would issue a decision by October 20, 2021.  After the decision, the litigants have thirty (30) days to file a petition for panel rehearing.  *See* Fed. Cir. R. Rule 40(d).  Assuming neither party files a petition for rehearing or petition for writ of certiorari to the Supreme Court, the Federal Circuit would issue its mandate seven (7) days after the time to file the petitioner for rehearing expires, or by Friday, November 26, 2021.  *See* Fed. R. App. P. 41(b).

Third, Defendant points out that Plaintiff "fails to account for the time between the issuance of the Federal Circuit's mandate and the actual issuance of the inter partes review

---

[8]   However, the chart indicates it "[e]xcludes cross and consolidated appeals," *see* http://www.cafc.uscourts.gov/the-court/statistics, which would include this case.

certificate by the Patent Office," which Defendant estimates would occur between December 2021 and January 2022.  Reply at 7:17-19.  Defendant cites to multiple cases where that process took between three to six months.  Reply at 7:19-8:10 (citing *AC Technologies S.A. v. Amazon.com, Inc.*, 912 F.3d 1358 (Fed. Cir. 2019) (issuing its decision on January 9, 2019 and mandate on February 15, 2019 with the PTAB issuing the IPR certificate on May 17, 2019); *Chamberlain Group, Inc. v. One World Technologies, Inc.*, 994 F.3d 919 (Fed. Cir. 2019) (issuing its decision on December 17, 2019, followed by a mandate on January 23, 2020, and the PTAB issuing the certificate on July 14, 2020); *Rosetta-Wireless Corp. v. Samsung Elec. Co., Ltd.*, 764 F. App'x 881 (Fed. Cir. 2019) (issuing its decision on April 19, 2019, followed by a mandate on May 28, 2019, and the PTAB issuing the IPR certificate on September 27, 2019)).  On this basis, Defendant argues the IPR certificate will likely issue between February and May 2022.

In this case, Plaintiff's claims are dependent on "contingent future events that may not occur."  *Trump*, 141 S. Ct. at 535.  Those events are the Federal Circuit's affirmance or reversal of the PTAB's decision, a potential petition for writ of certiorari to the Supreme Court, and the PTAB issuing a certificate as to the amended claims.  While Plaintiff argues those events are "imminent," imminence alone creates neither an actual injury not ripeness.

Plaintiff has no basis to allege a harm is "imminent" for a suit filed in August 2020 that will not be justiciable until at the earliest, seven months from now and fifteen (15) months from the original date the complaint was filed.  Plaintiff's claims are not ripe, and therefore, are not justiciable.

### 3.    *Plaintiff's Claims May be Moot by the Time They Ripen*

"When the parties lose their personal stake in the outcome, the case becomes moot and must be dismissed, even if it once was a live controversy at an earlier stage of the proceedings."  *United States v. Huff*, 703 F.3d 609, 611 (3d Cir. 2013) (citing *Davis v. FEC*, 554 U.S. 724, 732-33 (2008)).  Such "a dismissal for mootness is a dismissal for lack of jurisdiction."  *Target Training Int'l, Ltd. v. Extended Disc N. Am., Inc.*, 645 F. App'x 1018, 1025 (Fed. Cir. 2016).  In patent cases, a patent owner must show "a live case or

controversy exists and continues to exist on a claim-by-claim basis . . . at every stage of the litigation." *See, e.g.*, *Streck, Inc. v. Rsch. & Diagnostic Sys., Inc.*, 665 F.3d 1269, 1283 (Fed. Cir. 2012) (dismissing claims because the court lacked jurisdiction over certain unasserted patent claims where the counterclaimant failed to show the court had jurisdiction over those claims). "When a [patent] claim is cancelled, the patentee loses any cause of action based on that claim, and any pending litigation in which the claims are asserted becomes moot." *Hologic, Inc. v. Minerva Surgical, Inc.*, 325 F. Supp. 3d 507, 518 (D. Del. 2018), *aff'd,* 957 F.3d 1256 (Fed. Cir. 2020) (quoting *Fresenius USA, Inc. v. Baxter Int'l, Inc.*, 721 F.3d 1330, 1340 (Fed. Cir. 2013)).

Defendant notes in its reply brief that the 302 Patent expires on March 28, 2022. Reply at 4:22. Defendant argues that because the asserted claims in this case were amended claims added during the IPR, Pulse cannot seek damages for any activity prior to issuance of the certificate, which Defendant estimates will occur between February and May 2022, meaning  "the '302 Patent will most likely expire before Pulse can seek recompense for any alleged infringement." Reply at 4:22-26. If Defendant is correct, Plaintiff would never be able to assert the new claims pertaining to the 302 Patent against Defendant (or anyone else for that matter). However, such arguments are speculative, and the Court will not engage in speculation. In other words, Defendant's mootness arguments are not ripe, and as such, dismissal on that basis would be improper.

Finally, although Plaintiff advances other policy arguments—such as judicial economy—for why this Court should deny Defendant's Motion to Dismiss, the Court finds that not only were these arguments unpersuasive, they also lack the ability to allow this Court to retain a case over which it lacks subject-matter jurisdiction regardless of the strength of the policy argument.

### B.  Plaintiff's Request for a Stay

Plaintiff argues that if the Court feels inclined to grant Defendant's Motion, it should, in the alternative, stay this case until the Federal Circuit issues a decision on the cross-appeals, and a certificate issues.  Oppo. at 6:23-24.  In support of its argument,

Plaintiff cites to a case in Delaware, *Shure Inc. v. Clearone, Inc.*, No. CV 19-1343-RGA-CJB, 2021 WL 51386, at *1-3 (D. Del. Jan. 6, 2021), *report and recommendation adopted as modified,* No. CV 19-1343-RGA-CJB, 2021 WL 231638 (D. Del. Jan. 14, 2021), as grounds for why this Court should stay this case. *Id.* at 6:23-24.  Defendant responds that "[f]irst, if the Court finds that there is no standing and thus no subject matter jurisdiction, then the Court has no authority to retain jurisdiction over the case and must dismiss it." Reply at 10:28-11:6 (citing *Arbaugh v. Y&H Corp.*, 546 U.S. 500, 514 (2006) ("[W]hen a federal court concludes that it lacks subject-matter jurisdiction, the complaint must be dismissed in its entirety.")); *see also* 4:27-5:1.  Second, Defendant argues that standing must exist at the time a plaintiff files suit, "[s]o, if the case were maintained and stayed, the same lack of standing would exist when the case is eventually unstayed." *Id.* at 11:5-8, 5:1-13.  Finally, Defendant argues that Plaintiff's reliance on *Shure* is improper as that case is inapposite. *Id.* at 11:9-10.

Not only is *Shure* not binding on this Court, but it is also inapposite given the parties in *Shure* were actively litigating the patent-in-suit when IPR began, and following the IPR, the court entered a stay ***before*** either party filed a motion to dismiss claims pertaining to the patent-in-suit.  2021 WL 231638 at *1-2.  Here, on the other hand, Plaintiff filed *Pulse I*, the PTAB instituted IPR as to the 302 Patent claims, and the parties jointly moved to dismiss the 302 Patent claims, which the Court granted on February 14, 2020. *Pulse*, 2021 WL 981123, at *4.  After the Final Written Decision from the PTAB's IPR but before the issuance of the certificate, Plaintiff filed this suit, alleging infringement of claims not yet added to the 302 Patent. *See* Compl.

More importantly, the Court finds it appropriate to deny Plaintiff's request because it is procedurally improper.  Local Rule 7.1 requires that a hearing date must be requested from the clerk of the judge to whom a case is designed "for any matters on which a ruling is required."  S.D. Cal. Civ. R. 7.1(b); *see also id.* at subdivision (f) (requiring a motion to include the "hearing date and time").  In its Opposition, Plaintiff asks the Court to, in the alternative, stay this case; however, a request for a stay is a matter for which a ruling is

-26-

required, and Plaintiff never requested a hearing date.   S.D. Cal. Civ. R. 7.1(e)(7) (providing that "[t]he clerk's office is directed not to file untimely motions and responses . . . without the consent of the judicial officer assigned to the case").   As such, Plaintiff's request for a stay is improper and rejected.  *See, e.g.*, FED. R. CIV. P. 7(b) (noting that "[a] request for a court order must be made by motion"); *Steel v. Stoddard*, No. 11CV2073 H(RBB), 2013 WL 12064545, at *14 (S.D. Cal. Feb. 15, 2013), *order amended on denial of reconsideration on other grounds,* No. 11-cv-02073-H-RBB, 2013 WL 12064546 (S.D. Cal. Apr. 12, 2013) (holding that "the Court will not grant affirmative relief . . . based on a request included in an opposition to a motion."); *Thomasson v. GC Servs. Ltd. P'ship*, No. 05CV0940-LAB (CAB), 2007 WL 9770702, at *6 (S.D. Cal. July 16, 2007), *aff'd in part, rev'd in part,* 321 Fed. App'x 557 (9th Cir. 2008) ("In addition, the court rejects any discovery-related or other requests for affirmative relief Plaintiffs attempt to piggy-back on their Opposition as inappropriate, untimely, and obfuscating.").

As such, the Court **DENIES** Plaintiff's request that in the alternative, the Court stay this case.

## V.   <u>CONCLUSION</u>

For the above reasons, the Court **GRANTS** Defendant's Motion as follows:

1.      Defendant's Motion to Dismiss is **GRANTED**.  Plaintiff's Complaint is dismissed *without prejudice*.  *See, e.g.*, *Seaweed, Inc. v. DMA Prod. & Design & Mktg. LLC.*, 219 F. Supp. 2d 551, 554 (S.D.N.Y. 2002) ("A dismissal for lack of jurisdiction does not operate on the merits and therefore should not issue with prejudice.").  Leave to amend is denied as the claims are not ripe.  However, Plaintiff may re-file its complaint once the Director issues the certificate providing Plaintiff exclusion rights as to claims 18, 19, 22, and 23, provided the 302 Patent claims have not expired by that time.

2.      Plaintiff's request for a stay, made in its opposition papers, is **DENIED**.

3.      The Clerk of the Court is directed to close this case.

**IT IS SO ORDERED.**

DATED:     April 9, 2021

**HON. ROGER T. BENITEZ**
United States District Judge

3:20-cv-01676-BEN-DEB